## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

**PLASTICS ENGINEERING COMPANY**,

        Plaintiff,

    v.                               Case No.  **04-CV-825**

**LIBERTY MUTUAL INSURANCE COMPANY**,

        Defendant.

## DECISION AND ORDER

On September 1, 2004, Plastics Engineering Company ("Plenco") filed a complaint against Liberty Mutual Insurance Company ("Liberty") seeking a declaratory judgment as to Liberty's indemnification obligation regarding lawsuits against Plenco for its manufacture of products containing asbestos.

Plenco filed an answer and asserted forty-three affirmative defenses. Plenco also filed a counterclaim, also seeking a declaratory judgment as to its indemnification obligation and seeking recoupment or reimbursement of any claims paid in excess of its obligations. This case was randomly assigned to this court and the parties have consented to the full jurisdiction of a magistrate judge. On December 15, 2005, based upon stipulated facts, the parties each filed a motion for summary judgment. Although other issues are indirectly raised in this case, this court has limited itself to resolving the issues that were fully briefed in the parties' motions for summary judgment. The pleadings on these motions are closed that matters are ready for resolution.

## FACTUAL SUMMARY

From 1950 and until about 1983, Plenco manufactured and sold certain compounds that incorporated asbestos. (Stip. Fact 3.) Plenco has been named as a defendant in hundreds of lawsuits involving thousands of claimants in numerous jurisdictions alleging bodily injury or wrongful death related to, or arising from, exposure to asbestos-containing products sold by Plenco. (Stip. Fact 4.) These claimants generally allege that they have been injured over a period of time, beginning with their first exposure to asbestos, but that their asbestos-related injuries did not manifest until long after their exposure to the asbestos. (Stip. Fact 6.) The claimants' exposures are alleged to have occurred at different times and at different locations. (Stip. Fact 6.)

Liberty has provided various insurance policies to Plenco. From February 9, 1968 through January 1, 1986, Liberty insured Plenco under a primary policy with coverage limits of $500,000 per occurrence and $500,000 annual aggregate. (Stip. Fact 19.) From January 1, 1986 through January 1, 1989, Liberty insured Plenco under a primary policy with coverage limits of $1,000,000 per occurrence and $1,000,000 annual aggregate. (Stip. Fact 19.)

Liberty also insured Plenco under umbrella excess liability policies from May 8, 1970 through January 1, 1984. (Stip. Fact 20.) From May 8, 1970 through December 19, 1972, the coverage limits under each policy were $1,000,000 per occurrence and $1,000,000 annual aggregate. (Stip. Fact 20.) From December 19, 1972 through January 1, 1982, the coverage limits under each policy were $5,000,000 per occurrence and $5,000,000 annual aggregate. (Stip. Fact 20.) From January 1, 1982 through January 1, 1984, the coverage limits under each policy were $1,000,000 per occurrence and $1,000,000 annual aggregate. (Stip. Fact 20.) From January 1, 1984 through January 1, 1986, Liberty did not provide Plenco with umbrella excess liability coverage. (Stip. Fact 20.) From January 1, 1986

2

through January 1, 1988 Liberty again provided Plenco with umbrella excess liability coverage with coverage limits for each policy at $10,000,000 per occurrence and annual aggregate. (Stip. Fact 20.)

The primary policies issued by Liberty Mutual to Plenco for the period January 1, 1961 through January 1, 1967 include the following insuring clause:

> Coverage a – bodily injury liability
>
> To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person that caused by accident
>
> * * *
>
> Defense, Settlement, Supplementary Payments
>
> With respect to such insurance as is afforded by this policy, the Company shall:
>
> (a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the Company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient . . . .

(Stip. Fact 22.)

The primary policies issued by Liberty Mutual to Plenco for the period January 1, 1967 through January 1, 1989 include the following or similar language:

> The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of Coverage A. bodily injury or Coverage B. property damage to which this policy applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

(Stip. Fact. 23.)

3

Although "bodily injury" is not defined in the policies for the period January 1, 1961 through January 1, 1967, (Stip. Fact. 24), the polices for the period January 1, 1967 through January 1, 1973 define "bodily injury" as "bodily injury, sickness, or disease sustained by any person," (Stip. Fact. 25.) The primary policies issued by Liberty Mutual to Plenco for the period January 1, 1973 through January 1, 1989 define "bodily injury" as: "bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom." (Stip. Fact 27.)

The primary policies issued by Liberty Mutual to Plenco for the period January 1, 1967 through January 1, 1973 define "occurrence" as: "an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured." (Stip. Fact 28.) The primary policies issued by Liberty Mutual to Plenco for the period January 1, 1973 through January 1, 1989 define "occurrence" using the following or similar language: "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." (Stip. Fact 29.)

The primary policies issued by Liberty Mutual to Plenco for the period January 1, 1967 through January 1, 1973 contain a Limits of Liability provision stating:

> Regardless of the number of (1) insureds. under this policy, (2) persons or organizations who sustain bodily injury or property damage or (3) claims made or suits brought on account of bodily injury or property damage, the company's liability is limited as follows:

> Coverage A – The limit of bodily injury liability stated in the declarations as applicable to "each person" is the limit of the company's liability for all damages because of bodily injury sustained by one person as the result of any one occurrence; but subject to the above provision respecting "each person", the total

4

liability of the company for all damages because of bodily injury sustained by two or more persons as the result of any one occurrence shall not exceed the limit of bodily injury liability stated in the declarations as applicable to "each occurrence".

…

Coverages A and B – For purposes of determining the limit of the company's liability, all bodily injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence.

(Stip. Fact 30.)

The primary policies issued by Liberty Mutual to Plenco for the period January 1, 1973 through January 1, 1977 contain a Limits of Liability provision stating:

Regardless of the number of (1) insureds under this policy, (2) persons or organizations who sustain bodily injury or property damage, or (3) claims made or suits brought on account of bodily injury or property damage, the company's liability is limited as follows:

Coverage A - The total liability of the company for all damages, including damages for care and loss of services, because of bodily injury sustained by one or more persons as the result of any one occurrence shall not exceed the limit of bodily injury liability stated in the declarations as applicable to "each occurrence."

…

Coverages A and B – For purposes of determining the limit of the company's liability, all bodily injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence.

(Stip. Fact. 31.)

The primary policies issued by Liberty Mutual to Plenco for the period January 1, 1977 through January 1, 1984 contain a Combined Single Aggregate Limit of Liability Endorsement using the following or similar language:

5

COMBINED SINGLE AGGREGATE LIMIT OF LIABILITY

Regardless of the number of (1) insureds. under this policy, (2) persons or organizations who sustain bodily injury or property damage or (3) claims made or suits brought on account of bodily injury or property damage, the company's liability is limited as follows:

Coverage A and B – The total liability of the company for all damages because of all bodily injury and property damage to which this policy applies shall not exceed 500,000.

Subject to the above provision respecting the total liability of the company for all Bodily Injury and Property Damage to which this policy applies, if an occurrence gives rise to Bodily Injury or Property Damage which occurs partly before and partly within the policy period the liability of the company under this policy for such occurrence shall not exceed $500,000 minus the total of all payments made with respect to such occurrence under a previous policy or policies of which this policy is a replacement.

For the purpose of determining the limit of the company's liability (1) all bodily injury and property damage arising out of the continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence

(Stip. Fact 32.)

The primary policies issued by Liberty Mutual to Plenco for the period January 1, 1984 through January 1, 1989 contain a Limits of Liability provision using the following or similar language:

AMENDMENT—LIMITS OF LIABILITY (Single Limit) (Policy Aggregate Limit)

It is agreed that the provisions of the policy captioned "LIMITS OF LIABILITY" relating to Bodily Injury Liability and Property Damage Liability are amended to read as follows:

Bodily Injury Liability and Property Damage Liability:

(a) The limit of liability stated in the Schedule of this endorsement as applicable to "each occurrence" is the total limit of the company's liability for all damages including damages for care and loss of services because of bodily injury and property damage sustained by one or more persons or organizations as a result of any one occurrence,

6

provided that with respect to any occurrence for which notice of this policy is given in lieu of security, or when this policy is certified as proof of financial responsibility under the provisions of the Motor Vehicle Financial Responsibility Law of any state or province, such limit of liability shall be applied to provide the separate limits required by such law for bodily injury liability and property damage liability to the extent of coverage required by such law, but the separate application of such limit shall not increase the total limit of the company's liability.

(b) If an aggregate amount is stated in the Schedule, then, subject to the above provision respecting "each occurrence", the total liability of the company for all damages because of all bodily injury and property damage which occurs during each annual period while this policy is in force commencing from its effective date, shall not exceed the limit of liability stated in the Schedule of this endorsement as "aggregate".

(c) For the purpose of determining the limit of the company's liability, all bodily injury and property damage arising out of the continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence.

(Stip. Fact. 33.)

The excess policies issued by Liberty Mutual to Plenco for the period May 8, 1970 through January 1, 1984 and from January 1, 1986 to January 1, 1988 include the following or similar language:

COVERAGE-EXCESS LIABILITY

The company will pay on behalf of the insured all sums in excess of the retained limit which the insured shall become legally obligated to pay, or with the consent of the company, agrees to pay, as damages, direct or consequential, because of:

(a) personal injury, …

with respect to which this policy applies and caused by an occurrence.

(Stip. Fact 34.)

The excess policies issued by Liberty Mutual to Plenco for the period May 8, 1970 through January 1, 1984 and from January 1, 1986 to January 1, 1988 define "personal injury" using the

7

following or similar language: "'personal injury' means personal injury or bodily injury which occurs during the policy period sustained by a natural person..." (Stip. Fact. 35.)

The excess policies issued by Liberty Mutual to Plenco for the period May 8, 1970 through January 1, 1984 and from January 1, 1986 to January 1, 1988 define "occurrence" using the following or similar language: " ' occurrence' means injurious exposure to conditions, which results in personal injury . . . neither expected nor intended from the standpoint of the insured." (Stip. Fact 36.)

The excess policies issued by Liberty Mutual to Plenco for the period May 8, 1970 through January 1, 1984 and from January 1, 1986 to January 1, 1988 contain a Limits of Liability provision using the following or similar language:

> Regardless of the number of insureds. under this policy or the number of persons or organizations who sustain personal injury, property damage or advertising injury or damage, the company's liability is limited as follows:
>
> Each Occurrence – The limit of liability stated in the declarations as applicable to "each occurrence" is the limit of the company's liability for all damages, direct and consequential, because of all personal injury, property damage, or advertising injury or damage sustained by one or more persons or organizations as the result of any one occurrence. … For the purpose of determining the limits of the company's liability:
>
> (1) all personal injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions …
>
> shall be considered as the result of one and the same occurrence.

(Stip. Fact 37.)

The excess policies issued by Liberty Mutual to Plenco for the period May 8, 1970 through January 1, 1984 and from January 1, 1986 to January 1, 1988 include the following or similar language:

> Non-Cumulation of Liability-Same Occurrence-If the same occurrence gives rise to personal injury, property damage or advertising injury or damage which occurs partly before and partly within any annual period of this policy, the each occurrence limit and

8

the applicable aggregate limit or limits of this policy shall be reduced by the amount of each payment made by the company with respect to such occurrence, either under a previous policy or policies of which this is a replacement, or under this policy with respect to previous annual periods thereof.

(Stip. Fact 38.)

The excess policies issued by Liberty Mutual to Plenco for the period May 8, 1970 through January 1, 1984 and from January 1, 1986 through January 1, 1988 define "annual period" using the following or similar language:

"annual period" means the twelve month period following the effective date or any anniversary thereof falling within the policy period, or if the time between any such date and the termination of this policy is less than twelve months, such lesser period.

(Stip. Fact. 39.)

Liberty Mutual insured Plenco under primary policies effective January 1, 1989 to 2003. All primary policies effective January 1, 1989 to 2003 contained an asbestos exclusion. (Stip. Fact. 40.) Therefore, the policies at issue in this litigation are the primary policies from 1968 through 1989 and the umbrella coverage policies from 1970 to 1984 and 1986 to 1989.

Plenco purchased excess and/or umbrella excess policies from other insurers at various times during the period that it sold asbestos-containing products. Those policies are not currently at issue in this litigation. Liberty Mutual has been paying all of Plenco's defense costs, settlements and judgments for asbestos claims. (Stip. Fact 44.)  Liberty Mutual has advised Plenco that through December 15, 2005, Liberty Mutual has paid judgments and settlements on behalf of Plenco for asbestos claims in the amount of approximately $14.3 million. (Stip. Fact 45.) Liberty Mutual defended Plenco and paid settlements and judgments under a reservation of rights as set forth in correspondence sent to Plenco on or about January 6, 2004 (incorrectly dated January 6, 2003) and June 15, 2004. (Stip. Fact 46.)

## SUMMARY JUDGMENT STANDARDS

A motion for summary judgment will be granted when there are no genuine issues as to material fact and the movant is entitled to judgement as a matter of law. FED. R. CIV. P. 56(c). Here, the parties have stipulated to the material facts. The central issue in this case is the interpretation of insurance polices, which is a question of law. Private Bank & Trust Co. v. Progressive Cas. Ins. Co., 409 F.3d 814 (7th Cir. 2005); Westerman v. Richardson, 43 Wis. 2d 587, 591, 168 N.W.2d 851, 853 (1969).

This case comes before the court on diversity jurisdiction pursuant to 28 U.S.C. § 1332, and thus this court is required to apply state substantive law. Lexington Ins. Co. v. Rugg & Knopp, Inc., 165 F.3d 1087 (7th Cir. 1999). Wisconsin law applies in the present case and therefore this court must attempt to predict how the Wisconsin Supreme Court would decide the issues presented here. Id. (citing Allen v. TransAmerica Ins. Co., 128 F.3d 462, 466 (7th Cir. 1997)). "Where the state supreme court has not ruled on an issue, decisions of the state appellate courts control, unless there are persuasive indications that the state supreme court would decide the issue differently." Id. "In the absence of Wisconsin authority, [a federal court] may consider decisions from other jurisdictions." Id. (citing Valerio v. Home Ins. Co., 80 F.3d 226, 228 (7th Cir. 1996)).

## ANALYSIS

There are essentially three issues presented by the parties in their motions for summary judgment: (1) What does "occurrence" mean? Is Plenco's manufacture of asbestos over a period of years a single occurrence or does each individual's injury by Plenco's asbestos-containing products constitute a separate occurrence? (2) What is the coverage limit of Liberty's insurance policies? When an injury occurs over numerous policy terms, do the coverage limits of those policies aggregate or is Plenco's coverage limited to the maximum of any single policy? (3) Must Plenco make a pro rata

contribution to defense costs and damage payouts when the liability period includes periods where Plenco was not insured by Liberty for asbestos related claims? The court shall address each of these issues in turn.

## Occurrence

Liberty argues that Plenco's manufacture of products containing asbestos over the span of many decades represents a single occurrence. Plenco, however, argues that each individual injury resulting from Plenco's asbestos-containing products represents a separate occurrence.

Liberty's argument rests in large part upon the following provision in the Limits of Liability section of Liberty's insurance contract:

> Regardless of the number of . . . persons or organizations who sustain . . . bodily injury, or . . . claims made or suits brought on account of . . . bodily injury, . . . all . . . bodily injury arising out of a continuous or repeated exposure to substantially the same general conditions shall be considered as the result of one occurrence.

(Stip. Fact 30-32, 37.)

"Construction of a contract involves a question of fact only where its words are ambiguous and require construction by reference to extrinsic facts." Voigt v. Riesterer, 187 Wis. 2d 459, 465, 523 N.W.2d 133, 135 (Ct. App. 1994) (quoting Welter v. Singer, 126 Wis.2d 242, 248, 376 N.W.2d 84, 86 (Ct. App. 1985)).  The term "occurrence" has been held to be unambiguous by the Wisconsin Supreme Court. Id. (citing Olsen v. Moore, 56 Wis.2d 340, 351, 202 N.W.2d 236, 241 (1972)). "Interpreting unambiguous terms within an insurance contract is a question of law." Id. (citing Welter, 126 Wis.2d at 249, 376 N.W.2d at 86. "Furthermore, language in an insurance contract must be given its ordinary lay meaning. Id. (citing Kremers-Urban Co. v. American Employers Ins. Co., 119 Wis.2d 722, 735, 351 N.W.2d 156, 163 (1984)).

The parties agree that the primary Wisconsin case to address the meaning of "occurrence" as it is used in insurance policies is <u>Olsen v. Moore</u>, 56 Wis. 2d 340, 202 N.W.2d 236 (1972), in which the Wisconsin Supreme Court held an occurrence should be determined by focusing upon the cause of the injuries, rather than effect. <u>Id.</u> at 350-51, 202 N.W.2d at 241. However, no Wisconsin appellate court has applied this definition to the context of asbestos litigation.

The Wisconsin Court of Appeals has elaborated upon the holding in <u>Olsen</u>. The court said in <u>Welter v. Singer</u>, 126 Wis. 2d 242, 376 N.W.2d 84 (Ct. App. 1985), "where a single, uninterrupted cause results in all of the injuries and damage, there is but one 'accident' or 'occurrence.' If the cause is interrupted or replaced by another cause, the chain of causation is broken and there has been more than one accident or occurrence." <u>Id.</u> at 242, 376 N.W.2d at 87 (citing <u>Olsen</u>, 56 Wis. 2d at 349, 202 N.W.2d at 240). The court in <u>Welter</u> went on to say, "If cause and result are so simultaneous or so closely linked in time and space as to be considered by the average person as one event, courts adopting the 'cause' analysis uniformly find a single occurrence or accident." <u>Id.</u> at 251, 376 N.W.2d at 87.

The court in <u>Welter</u> held that there was a single occurrence in a traffic accident in which the driver of a car struck a bicyclist, stopped his car, then began moving again, dragging the bicyclist under the car. The driver then stopped the car again and a different driver moved the car in an attempt to free the bicyclist. <u>Id.</u> at 245, 376 N.W.2d at 85. This context is obviously quite distinct from the factual scenario presented in this case and therefore the applicability of any of these quoted passages is suspect. However, to the extent that this language is applicable to the present case, it indicates that each individual's injury constitutes a separate occurrence. The court in <u>Welter</u> defined occurrence as constituting a cause and a result that were closely linked in time and space. <u>Id.</u> at 251, 376 N.W.2d at 87. In the context of injury resulting from asbestos, the cause—the exposure or inhalation—is

considerably remote in time and place from the result—the manifestation of injury—which may occur decades after the cause. See Keene Corp. v. Ins. Co. of North Am., 667 F.2d 1034, 1040 (D.C. Ct. App. 1981).

Liberty relies in large part upon Society Ins. v. Town of Franklin, 2000 WI App 35, 233 Wis. 2d 207, 607 N.W.2d 342, in which the Wisconsin Court of Appeals held that contamination that resulted from the deposition of contaminants over a span of many years at a town landfill constituted a single, albeit on-going, occurrence. However, the parties in Society did not dispute that there was only one occurrence and the complaint itself alleged "one continuous occurrence." Id. at ¶7. Therefore, the definition of occurrence was not at issue. The issue in Society was whether policies could be horizontally stacked.

Despite repeatedly stating that there was only one occurrence, the court nonetheless held that the ongoing deposition of contaminants at the town dump triggered all policies in effect from the time the contamination began until remediation began. The court's conclusion that the policies may be horizontally stacked was not the result of unique policy language. As set forth in the court of appeals' decision, the policy language at issue in Society is very similar to the policy language at issue in the present case. The court of appeals stated:

> Under the policies, Society agrees to "pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of ... property damage to which this insurance applies, caused by an occurrence." The policies define "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." "Property damage" is defined as "physical injury to or destruction of tangible property which occurs during the policy period." In defining the extent of coverage, the policy states: "For the purpose of determining the limit of the company's liability, all bodily injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence." Finally: "The total liability of the company for all damages because of

13

> all property damage sustained ... as a result of any one occurrence shall
> not exceed the limit of property damage liability stated in the schedule
> as applicable to 'each occurrence.'"

Id. at ¶6.

It is not incumbent upon this court to explain what might be seen as a contradiction between the court's holding regarding coverage and its statement about a single continuing occurrence. Rather, this court shall focus upon the court of appeals' holding and its stated rationale.

The court of appeals' decision that the multiple policies were triggered by the ongoing deposition of contaminants at the town dump appears to have been based in large part upon the fact that Wisconsin courts have adopted the "continuous trigger" approach for cases involving ongoing exposure to harmful substances. See id. at ¶8 (citing Wisconsin Elec. Power Co. v. California Union Ins. Co., 142 Wis. 2d 673, 681, 419 N.W.2d 255 (Ct. App. 1987). Under the continuous trigger theory "injury occurs continuously from exposure until manifestation." Id. (quoting Michael G. Doherty, Comment, *Allocating Progressive Injury Liability Among Successive Insurance Policies,* 64 U. Chi. L. Rev. 257, 262 (1997)). Applying the continuous trigger theory to the facts of the case, the court in Society concluded that because the trigger was ongoing, multiple policies were triggered. The court stated, "It is the time of the injury, not the time of the occurrence, that determines which policies are triggered." Id. at ¶9.

Additionally, the court of appeals based its conclusion upon the policy language and specifically the fact that Society was obligated to pay all sums that the insured became legally obligated to pay. Id. at ¶9. Finally, the court of appeals determined that limiting Society's obligation to the coverage maximum of a single insurance policy would deprive the insured of coverage for which they had paid premiums. Id. at ¶¶10-11 (citing State Farm Mut. Auto. Ins. Co. v. Continental Cas. Co., 174 Wis. 2d 434, 442, 441-42, 498 N.W.2d 247 (Ct. App. 1993)).

Case 2:04-cv-00825-AEG   Filed 10/27/06   Page 14 of 22   Document 51

Applying the Society analysis to the present case, this court believes that the Wisconsin Supreme Court would conclude that each person's individual injury constitutes a separate occurrence, as that term is used in the insurance policies at issue in this case. Like the court of appeals in Society, this court's decision is based in large part upon the policy language.

According to the policy language at issue here, when the occurrence is ongoing, "occurrence" for coverage purposes is not defined from the perspective of the insured, but rather from the perspective of the injured. When the damage or injury results from an ongoing or continuous exposure to the same general conditions, there is but one occurrence. (Stip. Fact 30-32, 37.) Thus, the policies define an ongoing occurrence as the ongoing or continuous exposure to the same general injurious conditions. Only the injured are exposed *to* conditions. Therefore, based upon the plain language of the policies, for purposes of determining liability, it is exposure, not production, manufacture, or sale, that constitutes an occurrence.

In a similar fashion, this clause serves a valuable role in limiting Liberty's obligations. Each person who was injured by Plenco's asbestos-containing products generally was repeatedly exposed. (Stip. Fact 6.) Thus, in all likelihood, the person's injury was the result of an ongoing or continuous exposure to the same general conditions; therefore, based upon the policy language, this represents only a single occurrence. Absent this limiting language, an individual's injury could constitute multiple occurrences.

Recognizing that the term occurrence should be defined from the perspective of the injured is not incompatible with the Wisconsin Supreme Court's adoption of the cause theory definition of occurrence. It is simply unnecessary for this court to fall back upon the definition of occurrence set forth in case law because the definition of occurrence, at least when the occurrence is ongoing, is sufficiently clear from the text of the insurance contract.

15

## Coverage Limits

The primary and umbrella policies contained provisions limiting Liberty's liability per occurrence to the policy limit, minus any payments made regarding the same occurrence under a previous policy. Liberty argues that the non-cumulation provision of the policies limits its obligation to a single occurrence limit. Thus, it is Liberty's position that it owes no further obligation once it pays $15,000,000 in indemnity under the umbrella excess liability policies (Def. Brief Sum. Judg. p. 15). Plenco argues that Liberty is obligated to pay the aggregate of all policies, totaling $3,500,000 under the primary policies and $73,000,000 under the umbrella excess liability policies. Plenco first argues that the non-cumulation provision violates Wisconsin Statute § 631.43(1). Second, Plenco argues that there are multiple occurrences.

Regarding Plenco's claim that the non-cumulation provision is prohibited under Wisconsin law, Liberty argues that that statute can have no effect upon the policies issued prior to the statute's 1975 enactment. Second, Liberty argues that the statute is inapplicable to the present facts because the statute is applicable only to concurrent policies and the present situation involves successive policies.

Wisconsin Statute § 631.43(1) states:

> When 2 or more policies promise to indemnify an insured against the same loss, no "other insurance" provisions of the policy may reduce the aggregate protection of the insured below the lesser of the actual insured loss suffered by the insured or the total indemnification promised by the policies if there were no "other insurance" provisions. The policies may by their terms define the extent to which each is primary and each excess, but if the policies contain inconsistent terms on that point, the insurers shall be jointly and severally liable to the insured on any coverage where the terms are inconsistent, each to the full amount of coverage it provided. Settlement among the insurers shall not alter any rights of the insured.

The court finds significant the distinction between concurrent and successive policies. "Other insurance" provisions, like those addressed in § 631.43(1), deal with the situation of concurrent

Case 2:04-cv-00825-AEG   Filed 10/27/06   Page 16 of 22   Document 51

coverage. At issue in the present case is a "non-cumulation" provision, which is intended to address successive polices. Plenco has been unable to provide any case law that would indicate that § 631.43(1), which explicitly states it is intended to apply to situations involving "other insurance," should also apply to non-cumulation provisions. All the cases cited by Plenco deal with concurrent policies. See Krause v. Massachusetts Bay Ins. Co., 161 Wis. 2d 711, 468 N.W.2d 755 (Ct. App. 1991); Tahtinen v. MSI Ins. Co., 122 Wis. 2d 158, 361 N.W.2d 673 (1985). Therefore, this court concludes that § 631.43(1) does not invalidate the non-cumulation provisions in the policies.

However, the inapplicability of § 631.43(1) is not necessarily central to this case because, as discussed above, this court concludes that the asbestos claims against Plenco emerge from many occurrences. Therefore, for each occurrence, Liberty is obligated to pay up to policy's occurrence limit, less any amounts previously paid out under that policy. The policy language limiting incidents of continuous exposure to a single occurrence is not rendered mere surplusage by this interpretation. Rather, this clause serves the valuable role of limiting Liberty's obligation to an individual injured person to the maximum of any single triggered policy.

## Allocation

Plenco purchased successive annual primary liability insurance policies from Liberty from 1957 until 2003. Plenco also purchased umbrella liability coverage from Liberty from May of 1970 until 2003, with the exception of calendar years 1984 and 1985. However, the primary policies issued before February 9, 1968 and after January 1, 1988 exclude coverage for liability emerging from Plenco's manufacture of asbestos-containing products. Similarly, the umbrella policies issued after January 1, 1988 excluded coverage for asbestos-related liability. Liberty acknowledges that under the primary liability insurance policies it issued to Plenco, it is obligated to respond to asbestos related bodily injury claims from February 9, 1968 to January 1, 1989. Liberty similarly acknowledges that

under the umbrella insurance policies that Plenco purchased from Liberty, it is required to respond to claims involving bodily injury from May 8, 1970 through January 1, 1984 and from January 1, 1986 through January 1, 1988. Liberty seeks a declaratory judgment that Plenco is obligated to make a pro rata contribution when a person is injured partially within and partially without the policy periods.

Plenco argues that allocation is inappropriate because nothing in the policies permitted allocation and the policies at issue obligated Liberty to pay "all sums" that Plenco became legally obligated to pay for each occurrence. Thus, once a policy is triggered by an occurrence that is at least partially within the policy period, Liberty is obligated to provide Plenco with a full and complete defense and indemnification up to the maximum of any triggered policy.

Plenco cites transcripts of Wisconsin circuit court oral decisions to support its argument that Wisconsin law accepts the "all sums" as opposed to pro rata approach. Liberty argues that, in addition to being merely persuasive authority, none of these circuit court pronouncements directly support Plenco's position, either because the court stated it was not deciding the allocation issue, the policy language was different, or it is unclear if the court even reviewed the policy language. (Def. Resp. pp. 6-8.) The parties agree that neither the Wisconsin Supreme Court nor the Court of Appeals has ruled on the allocation issue presented in this case.

Plenco also cites precedents from other jurisdictions where the all sums approach has been accepted. Finally, Plenco argues that any ambiguity over the meaning of the "all sums" as it is used in the policy should be resolved against Liberty as the drafting party.

The lead case representing the all sums approach is Keene Corporation v. Insurance Company of North America, 667 F.2d 1034 (D.C. Ct. App. 1981), in which the court rejected the argument that the insured producer of asbestos-containing products should be responsible for a pro-rata share of damages and costs for the relevant exposure periods for which the insured lacked coverage. Thus, the

18

insurance companies were obligated to pay all damages and costs, subject to the policy terms and limits, even though they had not provided insurance coverage for the entire exposure period. Numerous other jurisdictions have adopted the all sums approach. See, e.g., Hercules, Inc. v. AIU Ins. Co., 784 A.2d 481, 490-94 (Del. 2001); Allstate Ins. Co. v. Dana Corp., 759 N.E.2d 1049, 1058 (Ind. 2001); Am. Nat'l Fire Ins. Co. v. B&L Trucking & Constr. Co., 951 P.2d 250, 253 (Wash. 1998); Aerojet-General Corp. v. Transp. Indem. Co., 948 P.2d 909, 931-32 (Cal. 1997); Monsanto Co. v. C.E. Heath Comp. & Liab. Ins. Co., 652 A.2d 30, 35 (Del. 1994); J.H. France Refractories Co. v. Allstate Ins. Co., 626 A.2d 502, 507 (Pa. 1993); Zurich Ins. Co. v. Raymark Industries, Inc., 514 N.E.2d 150, 165 (Ill. 1987); Tinsley v. Aetna Ins. Co., 205 S.W.2d 78, 81 (Mo. App. 1918); AC and S, Inc. v. Aetna Casualty & Sur. Co., 764 F.2d 968, 974 (3d Cir. 1985).

The all sums approach, as Liberty points out, has been rejected in many jurisdictions, in favor of a pro rata approach. See, e.g., Sec. Ins. Co. v. Lumbermens Mut. Cas. Co., 826 A.2d 107, 121 (Conn. 2003); Consol. Edison Co. of N.Y. v. Allstate Ins. Co., 774 N.E.2d 687, 694-95 (N.Y. 2002); Pub. Serv. Co. of Colo. v. Wallis & Cos., 986 P.2d 924, 939-40 (Colo. 1999); Domtar, Inc. v. Niagara Fire Ins. Co., 563 N.W.2d 724, 732-33 (Minn. 1997); Sharon Steel Corp. v. Aetna Cas. & Sur. Co., 931 P.2d 127, 140-42 (Utah 1997); Owens-Illinois, Inc. v. United Ins. Co., 650 A.2d 974, 993-95 (N.J. 1994); Norfolk S. Corp. v. Cal. Union Ins. Co., 859 So. 2d 201, 207-08 (La. Ct. App. 2003); Mayor & City Council of Balt. v. Utica Mut. Ins. Co., 802 A.2d 1070, 1101-04 (Md. Ct. Spec. App. 2002); Arco Indus. Corp. v. Am. Motorists Ins. Co., 594 N.W.2d 61, 69 (Mich. Ct. App. 1998), aff'd, 617 N.W.2d 330 (Mich. 2000); Spartan Petroleum Co. v. Federated Mut. Ins. Co., 162 F.3d 805, 812 (4th Cir. 1998); Olin Corp. v. Ins. Co. of N. Am., 221 F.3d 805, 812 (2d Cir. 1996); Stonewall Ins. Co. v. Asbestos Claims Mgmt. Corp., 73 F.3d 1178, 1202-03 (2d Cir. 1995), opinion modified, 85 F.3d 49 (2d Cir. 1996); Gulf Chem. & Metallurgical Corp. v. Associated Metals & Minerals Corp., 1 F.3d 365,

371-73 (5th Cir. 1993); <u>Commercial Union Ins. Co. v. Sepco Corp.</u>, 765 F.2d 1543, 1544 (11th Cir. 1985); <u>Ins. Co. of N. Am. v. Forty-Eight Insulations, Inc.</u>, 633 F.2d 1212, 1224-25 (6th Cir. 1980).

Liberty argues that the all sums approach should be rejected in this case because it is contrary to the policy language and that it unfairly requires insurers to provide coverage for periods for which they have received no premiums.

The court turns first to the policy language. Although the language varies slightly throughout the numerous policies, Liberty's obligations can be summarized as an obligation to pay "all sums" that Plenco should be obligated to pay as the result of personal injury that occurred during the policy period. (Stip. Fact. 22, 23, 26, 27, 34, 35.)

There is nothing in any of the policies that limits Liberty's obligations to a pro rata share of Plenco's obligations. Rather, Liberty's obligations are limited by the fact that coverage is not triggered absent an occurrence during the policy period. In the context of asbestos litigation, an occurrence is exposure resulting in injury. Thus, Liberty's obligations are triggered whenever a person alleges injury from asbestos exposure occurring at least in part during the policy period. Additionally, because Wisconsin has adopted the continuous trigger approach, it would appear that all applicable policies in effect up until the manifestation of the injury are triggered by an occurrence. <u>See</u> <u>Society</u>, 2000 WI App 35, ¶8, 233 Wis. 2d 207, 607 N.W.2d 342. However, the issue of whether all policies in effect up until manifestation are triggered is not squarely presented to this court and this court need not resolve this question to decide the issues presented.

The question that is central to this litigation is what happens when a policy is triggered during a policy period but the injured party's exposure period includes times for which Liberty did not provide coverage? This court believes that the policy language unambiguously answers this question when it obligates Liberty to pay all sums associated with an occurrence. Even when that occurrence

Case 2:04-cv-00825-AEG   Filed 10/27/06   Page 20 of 22   Document 51

continues beyond or began before the policy period, Liberty remains obligated to pay all sums associated with the injury. "Once coverage is triggered in one or more policy periods, those policies provide full coverage for all continuing damage, without any allocation between insurer and insured." Am. Nat'l, 951 P.2d at 256-57; see also J.H. France, 626 A.2d at 508 ("[O]nce the liability of a given insurer is triggered, it is irrelevant that additional exposure or injury occurred at times other than when the insurer was on the risk. The insurer in question must bear potential liability for the entire claim.").

It is clear that Liberty anticipated occurrences that would span more than a single policy term by its inclusion of certain limiting clauses, (see Stip. Fact. 32, 38), but nonetheless, it did not include a provision calling for pro rata allocation. Certainly, Liberty could have included such a clause in the policy. This court shall not read a clause calling for pro rata allocation where none exists. See Monsanto, 652 A.2d at 35 ("The majority of courts have held that without a pro rata clause in the policies, the insurances companies cannot limit their obligations to a pro rata share or portion of [the insured's] liabilities.") (citing cases). Instead, the court shall read the insurance policies as they are unambiguously written: Liberty is obligated to pay all sums, not merely some pro rata portion thereof. See J.H. France, 626 A.2d at 507.

**IT IS THEREFORE ORDERED** that, for the reasons stated above, each person's injury resulting from exposure to Plenco's asbestos-containing products constitutes a separate occurrence under Liberty's insurance policies. However, the policies' non-cumulation provisions limit an individual claimant's recovery, and thus Liberty is not obligated to pay to any single claimant on behalf of Plenco more than the maximum of any single triggered policy. Therefore, Liberty's maximum obligation for all claimants is the sum of the coverage limits of all triggered policies. Finally, Liberty is obligated to pay all sums arising from an occurrence and is not entitled to a pro rata contribution. Provided a policy is triggered during a policy period, Liberty is obligated to pay all sums

Case 2:04-cv-00825-AEG   Filed 10/27/06   Page 21 of 22   Document 51

arising from an occurrence, up to policy limits, even if the time of the injured person's exposure or the manifestation of his injuries included periods in which Plenco was uninsured, insured with another company, or the Liberty policies excluded coverage from asbestos specifically or products generally.

**IT IS FURTHER ORDERED** that by **November 7, 2006**, the parties shall each submit a statement regarding what matters or procedures remain unresolved in this case.

Dated at Milwaukee, Wisconsin, this <u>27th</u> day of October, 2006.


<u>s/AARON E. GOODSTEIN</u>
United States Magistrate Judge